## RICHTER v. VICKSBURG CANDY Co.*

(Division B. June 9, 1924. Suggestion of Error Overruled Sept. 15. 1924.)

[101 So. 294. No. 24154.]

1. PRINCIPAL AND AGENT. *Sales. Power of selling agent to bind principal by oral representations stated; buyer not bound to accept where failure to pack and ship in mode stipulated lessens marketability.*

   Power conferred on agent to make sale where no restriction of authority is stipulated in the order or contract makes him the agent of the seller, and, where he makes a representation in making a sale as to how goods will be shipped and marked, it will bind the seller, even though not written in the order; and, if goods are not packed, marked, and shipped as agreed, or as it is represented they will be, and the marketability of the goods is lessened, the buyer is not bound to accept them.

2. CUSTOMS AND USAGES. *Rule stated as to effect of custom as to making and packing, where place of delivery different from buyer's residence.*

   Where a sale is made for goods to be delivered f. o. b. factory, it is error to give an instruction as to custom at the place or community of the buyer, where the place of delivery is different from the residence of the buyer, unless there is a contract affecting the matter, or unless the custom is brought to the attention of the seller and impliedly agreed to.

---

*Headnotes 1. Agency, 2 C. J., section 541; Sales, 35 Cyc, p. 257; Customs and Usages, 17 C. J., section 15.

APPEAL from circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Action by David Richter, doing business as The Richter Manufacturing Company, against the Vicksburg Candy Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*Dabney & Dabney,* for appellant.

This is the second appearance of this case in this honorable court.  On the first trial in the circuit court the judge gave a peremptory instruction for the defendant, and this court, through Justice COOK (90 So. 445), held that the issues should have been submitted to the jury, and the case was reversed and remanded. . On the present trial the issues were submitted to the jury but, we claim, on incompetent testimony and erroneous instructions, and the jury returned a verdict for the defendant. The plaintiff in the lower court is the appellant here and the defendant in the lower court is the appellee here.  The facts in the case are these: on the 18th day of March, 1919, the plaintiff, through its traveling salesman, V. B. Fisher, obtained an order from these defendants for twenty-six thousand butter boxes of various sizes, the price of which was to be twenty-five and one half cents per pound f. o. b. factory, and a written order was signed by this defendant and accepted by this plaintiff.

This is a plain suit on an open account supported by affidavit, denied by a general issue plea and counter-affidavit and notice.  In its notice defendant admits the purchase and sets up various pretended defenses to the payment of this account.  These alleged defenses are that: 1.  Defendants would be unable to determine, except at great expense, if the said packages contained the quantities they purchased. 2.  That two of the packages were broken open before delivery by the railroad to the defendants: that these two packages had nothing in the way of labels or otherwise to indicate their contents and that, therefore, defendants are unable to say whether two packages were short. 3.  That the gross weights of the bill of lading was three thousand five hundred sixty-one pounds; that defendants weighed five or six empty cartons and they weighed six and one half to seven pounds and that the net weight would be seven hundred or eight

hundred pounds. 4. That there was nothing on any of the packages to indicate to defendants and to their trade or customers the quantities contained in the respective packages as is usually the custom in the trade, and that this prevented defendants from undertaking to sell the same with safety, unless said packages should be all undone and counted, which would have been costly, would have depreciated their value, rendered the goods unsanitary and unsaleable. 5. That defendants will offer proof to show that these trays are uniformly packed in cartons of two hundred and fifty trays, etc.; that some of the cartons contained by count one hundred and twenty, some one hundred and fifty, some two hundred and fifty, and others varying amounts.

We deem it necessary to notice only so much of said alleged defenses as defendant undertook to embody in their instructions to the jury. The first granted instruction No. 2 (R. p. 26) tells the jury that although they may believe from the evidence that there was no understanding and agreement made by Fisher with defendants to make the packages uniformly contain two hundred and fifty butter trays or boxes, still if they believe from the evidence that it was customary in the Vicksburg territory to pack said trays in packages of two hundred and fifty each, or that this was the standard method of packing them, then it is the sworn duty of the jury to find for the defendant. According to this instruction the trial court held that even though the jury should believe that there was no agreement between salesman Fisher and defendants to make the packages uniformly contain two hundred and fifty trays, still if they believed from the evidence that it was customary in the Vicksburg territory to pack said trays in packages of two hundred and fifty each, or that this was the standard method of packing them, the defendants were entitled to a verdict.

Now, there does not seem to be any question but that it is permissible to prove a custom or usage in trade under some circumstances, but we do not think that there

was sufficient proof here where this defendant relies for its alleged knowledge of the custom on what it says it has seen in "every jobbing house in Vicksburg," and is immediately disputed by three of its own witnesses, Lassiter, Laudenheimer and Haines, each and all of whom say they have never handled goods of the character of the goods in question, and don't know how they are packed, and the other witness (Fousse) does not say whether he has handled them or not. We think this proof is too flimsy on which to establish a custom—alleged custom. Mr. Richter explains the matter clearly when he says that it is customary to pack wooden trays as testified by Cassino, but not folding wax paper boxes with a lid, and this testimony is borne out by Mr. Lassiter who refers to the way "trays of another character" were put in "bundles" evidently having reference to the wooden trays mentioned by witness Haines and which come in bundles and not cartons. But assuming that it was customary in the Vicksburg territory to pack those waxed paper boxes as claimed by defendants; there is nothing in the testimony to indicate that this custom was so general or notorious as to charge the seller (Mr. Richter) with knowledge of the fact. Even Messrs. Lassiter, Haines and Laudenheimer—three wholesale grocerymen —who have been in business right here for many years testify positively they don't know how goods of this particular class should be packed, so much less would Mr. Richter know. 8 Ruling Case Law, S. 8, p. 160; Usages and Customs, 8; *Allen* v. *Lyles*, 35 Miss. 513; 1 Miss. Digest Anno. p. 820, sec. 191; *Allen & Co.* v. *D. C. Lyles*, 35 Miss. 513.

II. As to the proving of an alleged verbal agreement by a salesman, enlarging the seller's obligation under a valid written contract, we have here a valid written contract, or order, signed by the buyer—it embodied many terms and conditions—and the law presumes that the

full agreement of the parties is embodied in that written contract. Parol evidence is inadmissible to contradict any of its terms, to add to its provisions, or to subtract from them. The liability of both parties is fixed by it; and their liability is not to be increased or diminished by injecting into the contract by parol testimony any new stipulations. Custom, and that the seller had knowledge of such custom, may be proven by competent evidence. but a verbal agreement to do something that would be a compliance with such custom made at the time of signing a valid contract and not embodied in the terms of such contract, may not be proven as a part of the contract. *Mizell* v. *Sims*, 39 Miss. 331; *Patterson* v. *Kirkland*, 34 Miss. 423; *Herndon* v. *Henderson*, 41 Miss. 584; *Cocke* v. *Bailey*, 42 Miss. 81; *Kerr* v. *Kuykendal*, 44 Miss. 127; *Wrenn* v. *Hoffman*, 41 Miss. 616; *Milburn Gin & Machine Co.* v. *Ringold*, 19 So. 675, not officially reported.

*Brunini & Hirsch*, for appellee.

There was no way, as the testimony shows, for the appellees to determine whether or not the one hundred and ten containers covered twenty-six thousand butter boxes except to open up the containers and count them. Furthermore, there was no way for appellees to determine the net weight of the butter boxes, nor the weight of the containers, except to open the containers, weigh the contents, the butter boxes, and then weigh the containers. The fact is that two of the containers were delivered by the railroad at Vicksburg to appellees broken open and notation of the same was made by the railroad company on its freight bill of that fact. Some of the butter boxes were moved from each of these two containers. Appellees were absolutely helpless to determine what number of butter boxes, or how many pounds of butter boxes had been removed from these two packages in order to make

claim against the railroad company because there were no marks on these containers giving the number of butter boxes therein, or the pounds therein.

Now, appellant endeavors to meet all of this by arguing that the contract of sale was silent as to how the butter boxes were to be packed, and silent as to the number to be put in each container or package. It is true that the sales contract doesn't say how the butter boxes were to be packed, nor does it say how many butter boxes were to be put in each container or package. The fact is, the sales contract does not disclose that the butter boxes were to be packed at all, doesn't say that they were to be put in containers or packages, doesn't say that if put in containers or packages, they are to have any marks on the outside of the package. Following appellant's contention to its logical conclusion he could have shipped the butter boxes loose and in bulk. He could have failed to even assort the butter boxes and shipped them all mixed up, in a box car for instance. Now appellant has quoted from a number of decisions to the effect that a written contract cannot be varied in any way by parol testimony. Every single detail in the busy commercial world cannot be included in a contract and it is never done.

Suppose that twenty-six thousand cans of baking powder were shipped in a car loose, without being put in any container or box, would it be said that that was a compliance with the contract even though the contract was silent as to whether the cans of baking powder were to be shipped in boxes, or to be shipped loose? Suppose that one bought five thousand pounds of lard and the method of packing was not stated in the written sales contract. Could it be successfully contended that this lard could be shipped in bulk in a tank? Would this honorable court not require the lard to be put in tierces, the usual and customary way of packing lard?

Chief Justice SMITH in *English* v. *Railroad,* 100 Miss.

575, says: "It may be noted that this is not an effort to avoid the contract for reason of illegality or failure of consideration, but is simply an attempt to inject into the contract a number of agreements not contained in the writing and necessarily excluded by its terms." There is absolutely nothing in the written contract, at bar, which necessarily excludes by its terms the parol contract to pack the butter boxes in containers of two hundred and fifty each. "So mere written orders for goods, which do not contain the terms of a complete contract will not exclude parol evidence of the contract actually made." 21 Ency. of Law, 1087.

Complaint is made by appellant of the giving by the court of instruction given appellees, numbered 2 (R. 26), which tells the jury in effect that if it believes from the evidence in the case that it was customary in the Vicksburg territory to pack the butter boxes in packages of two hundred and fifty each; or that this was a standard method of packing said butter boxes, they should find for appellees. On the one hand we have the testimony of appellees that such was the custom and standard method of packing these butter boxes. Mr. Cassino testifies that he knew the custom in reference to the packing of these butter boxes and similar butter boxes and stated that it was customary to pack them two hundred and fifty to a box, he having bought and sold them and seen them in every jobbing house in Vicksburg. On cross examination, this witness also said that it was customary to pack them two hundred fifty to the container. It is true that the appellant testified that they were not so packed, but this question was submitted to the jury and decided adversely to appellant.

Appellant cites a number of authorities and has confused the law pertaining to what may be termed a trade custom and a legal custom. "The distinction is made in 27 R. C. L. 152." *Richmond* v. *Union Steamboat Co.,* 87 N. Y. 240-249; *Schroeder* v. *Schweizer Lloyd Trans-*

*port Versicherungs Gesellschaft,* 606 Cal. 467-480, 44 Am.
Rep. 61. The use of the word "customary" in said in-
struction number 2 is in the sense of "course of busi-
ness" or "course of trade" and it was in that sense that
the contract was made by appellant and appellees at
Vicksburg, Miss. The custom in the instruction was not
that custom which has the force and effect of law. "A
custom is something which has the force and effect of law
and is law by the authority and consent of the people;
but it must be uniform and universal within the sphere
of its action, and so ancient that the memory of man run-
neth not to the contrary." *Hursh* v. *North,* 40 Pa. 241;
1 Bl. Comm. 68, 74; *Stimmel* v. *Brown* (Del.), 30 Atl.
996-7; *Minis* v. *Nelson* (U. S.), 43 Fed. 777-779; 27 R.
C. L. 162, 163, 164, 187, 189.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was plaintiff below, and filed suit against
the appellee on an open account for seven hundred seven-
ty-one dollars and thirty-seven cents, duly verified by
affidavit. The account is based upon an order signed by
the appellee given to the traveling salesman of the appel-
lant, which reads as follows:

"No. 175.                    Date, March, 18, 1919.

"Richter Manufacturing Co.: Ship to Vicksburg Can-
dy Co., at Vicksburg, Miss. How Ship: F. o. b. factory.
Terms: 2 per cent. 10 days, 30 net. When: Soon as
possible. Salesman, V. B. Fisher. Buyer—

    10,000 1 lb. butter boxes about  80 lbs. per M
    10,000 2 lb. butter boxes about 120 lbs. per M
    3,000 3 lb. butter boxes about 160 lbs. per M
    3,000 5 lb. butter boxes about 200 lbs. per M

    26,000

"It is understood and agreed that shipment of this
order is subject to delay, account of railroad embargoes
and war-time conditions.

"These boxes are not guaranteed grease proof.

"Twenty-six thousand boxes, about 3,080 lbs. printed strictly sanitary for our stock at twenty-five and half cents per pound.

"Vicksburg Candy Co.,
"Per V. Cassino."

The defendant filed a counter affidavit, in which he alleges that the account sued on is untrue and incorrect; that it is not due and owing from the defendant to the plaintiff; and that the matters and things set forth by the defendant in its notice under its plea of the general issue in this case are true and correct as therein set forth. The said notice under the general issue alleged that the defendant purchased from the plaintiff ten thousand one-pound wax butter boxes, ten thousand two-pound wax butter boxes, three thousand three-pound wax butter boxes, and three thousand five-pound wax butter boxes; that there were one hundred and ten packages delivered to it by the plaintiff, but that it would be unable, except at great expense, to determine if the said packages contained the quantities purchased by it; that there were two packages that had been opened, and that the defendant and a representative or agent of the railroad company counted the trays in the said two packages, and found in one only ninety-two trays and in the other ninety-three trays; that neither of these two packages had anything whatever in the way of labels to indicate the contents of the cartons, and that the defendant is unable to say whether the said two packages were short; that the gross weight on the bill of lading was three thousand five hundred and sixty-one pounds, and that the entire shipment was billed by the plaintiff to the defendant at three thousand one hundred and thirty-three pounds; that the defendant emptied five or six of said cartons and weighed the empty cartons; that they weighed from six and one-half to seven pounds, that there were one hundred and ten of them. The defendant also alleged that it would show that there

was nothing on any of the packages to indicate to the defendant or to its trade the quantities contained in the respective packages or cartons, as is usually the custom in the trade, and that this prevented the defendant from undertaking to sell the same with safety, unless said packages should be undone and counted, and that to do so would be costly and expensive; and that the packages in their present condition were unsalable and unmerchantable; that to handle the trays by undoing the packages, etc., would have depreciated their value, would have been unsanitary, and would have rendered them unsalable and unmarketable. The defendant also averred that it would show that these packages contained from two hundred and fifty to five hundred trays, that the larger trays were packed in cartons of two hundred and fifty trays each; that the trays purchased by the defendant from the plaintiff were of the larger size, and that some of the cartons contained by actual count one hundred and twenty, some one hundred and fifty, some two hundred and fifty, and others varying amounts; that there was nothing to indicate on the packages or cartons the size of the trays, although the purchase made by the defendant was of four different sizes, to-wit, one, two, three, and five pounds, respectively. That the said trays were purchased on the 18th of March, 1919, for immediate shipment, but that the shipment was not made until the 30th day of April, 1919; that defendant is in the wholesale business, and that plaintiff's salesman urged the defendant to take his line of trays; that plaintiff's salesman, Mr. Fisher, sold to certain parties certain numbers of the trays for the account of defendant, and that the defendant was to have the profit on these sales to parties in the Vicksburg territory, but that, owing to the method in which the trays were packed, these orders could not be filled; that immediately upon the receipt of said shipment and the discovery of its condition the defendant notified the plaintiff that it could not handle said shipment on account of

the way they were packed, and that said shipment was held subject to plaintiff's orders; that it was agreed between Fisher, the agent of plaintiff, and the defendant that the trays were to be delivered packed in cartons of two hundred and fifty trays each.

It was the contention of the plaintiff that the order above set out was the exclusive terms of the sale, and that the alleged agreement with Fisher and the defendant as to how the trays should be packed is not admissible. It is also contended by the appellant, plaintiff below, that the trays were packed in accordance with the usual custom which was to pack one- and two-pound trays, four hundred to the carton, three-pound trays, two hundred and fifty to the carton, five-pound trays, two hundred to the carton; that this method of packing was necessary, because the cartons were the same size, and to fill them would require different numbers, according to the size of the trays. The proof for the appellant also showed that the cartons were packed at the shipping point and marked in crayon on the outside giving the number of trays, size, and weight. The proof for the appellee, defendant below, shows that many of the cartons were not marked at all to show the number of trays, size or weight; that others were so blurred that the figures could not be deciphered. The appellant also offered testimony of certain merchants at Vicksburg who handled wooden butter trays that it was the custom to pack two hundred and fifty trays to the carton in the Vicksburg territory. There was no proof by any person handling this particular line of trays as to the method of packing trays for the Vicksburg territory, nor was there any proof to show any knowledge of any such custom, if such existed, on the part of the plaintiff.

There was a verdict and judgment for the defendant.

The court refused a peremptory instruction for the plaintiff, and refused an instruction telling the jury for the plaintiff to disregard all of the testimony of the de-

fendant that the salesman, Fisher, told him that the goods would come packed two hundred and fifty trays to the box or carton. The court gave the defendant an instruction:

"That, although you may believe from the evidence in this case that there was no understanding and agreement made by the said Fisher, on behalf of plaintiff, with defendant, to make the packages uniformly contain two hundred and fifty butter trays or boxes, still, if you believe from the evidence in this case that it was customary, in the Vicksburg territory, to pack said trays in packages of two hundred and fifty each, or that this was the standard method of packing said butter boxes or trays, then it is your sworn duty to find for the defendant."

It is contended by the appellant that the plaintiff should have had a peremptory instruction, because the order above set out contained no stipulation with reference to the packing or the contents of the cartons with reference to the number and weight, and that it was not competent to admit the alleged agreement between the salesman of the plaintiff and the defendant, and that there was no dispute that the butter trays were packed in accordance with the usual method of the plaintiff at place of shipment, the order being an order f. o. b. factory. It is also contended by the appellant that the giving of the instruction above set out as to the custom in the Vicksburg territory was error, for the reason that the order was f. o. b. factory at the shipping point.

It will be noted from a reading of the order that the order does not limit the power or authority of the salesman to solicit orders, or that the order is to be approved at the office of the seller. It is clear that Fisher had authority to make the sale, and, as there is nothing in the contract that limits his authority to solicit orders, we think it was competent for the defendant to prove his statements and agreements as to how the trays would be packed and marked, and it was a question for the jury to

say from all of the proof as to whether the cartons were properly marked in accordance with the understanding and with the usages of trade in such business, and therefore that the plaintiff was not entitled to a peremptory instruction.

We think, however, it was error to give the instruction for the defendant above set out. The order was f. o. b. shipping point, and the custom existing in the Vicksburg territory in the absence of agreement would not be applicable especially, unless it was brought to the attention of the seller at the time the order was procured and accepted. In the absence of agreement to the contrary the usual method and custom at the place of delivery prevail.

As the judgment must be reversed for the error in giving this instruction, we do not think it necessary to notice the other assignments.

*Reversed and remanded.*